IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MICHELLE A. TRITTIN,

                    Plaintiff,

    v.                                                                    OPINION and ORDER

FRANK J. BISIGNANO,[1]                                                24-cv-889-amb
Commissioner of Social Security,

                    Defendant.

---

Plaintiff Michelle A. Trittin seeks judicial review of a final decision of defendant Frank J. Bisignano, Commissioner of the Social Security Administration, finding that Trittin was not disabled within the meaning of the Social Security Act. The parties have consented to jurisdiction by a United States Magistrate Judge. Dkt. 2.

Trittin contends that administrative law judge (ALJ) Gary A. Freyberg erred in rejecting the opinion of Tiffany Pluger, an advanced practice nurse prescriber, who opined that Trittin should be granted disability benefits. Pluger indicated that Trittin had marked limitations in her mental abilities and aptitudes needed to do unskilled work, semiskilled and skilled work, and particular types of jobs because of her diagnoses of post-traumatic stress disorder (PTSD), anxiety, and recurrent severe major depressive disorder.

As explained below, the court must affirm the Commissioner's decision because the ALJ demonstrated his consideration of the relevant evidence and provided adequate reasons for

---

[1] The court has amended the caption to reflect Frank J. Bisignano's appointment as Commissioner of Social Security. Fed. R. Civ. P. 25(d).

finding Pluger's opinion less persuasive than those of state agency medical consultants in crafting Trittin's residual functional capacity assessment.

BACKGROUND[2]

Trittin applied for supplemental security income in December 2021, when she was 50 years old, alleging that she had been disabled since April 20, 2020 due to a combination of physical and mental impairments. AR 165. Only Trittin's mental impairments are relevant to this appeal.

## A. Pluger's mental medical source statement

In February 2024, Pluger completed a mental medical source statement in support of Trittin's application for benefits. AR 1041–48. Pluger first assessed Trittin in October 2019, after she had been diagnosed with anxiety, depression and dysthymic disorders, chronic PTSD, and alcohol use disorder. AR 414. Pluger saw Trittin on a regular basis from that point; initially every two weeks and later every three months. AR 1041.

Pluger opined in her statement that Trittin is unable to work. In support, Pluger stated that Trittin has PTSD because of a long history of trauma at work and in her personal life that causes her to struggle with crowds, being around others, flashbacks, recurring memories and a heightened fight or flight response. Pluger described Trittin as experiencing agitation, irritability, hostility, hypervigilance, social isolation, increased guilt, insomnia, emotional detachment and unwanted thoughts, and as at times unable to leave her vehicle once she has arrived at work due to anxiety.

---

[2] Record cites in this opinion are to the administrative record (AR) located at Dkt. 4.

2

Trittin, Pluger explained, had attempted "several jobs since being under [Pluger's] care," but was unable to maintain employment for long because of her symptoms. AR 1045. Pluger indicated that Trittin is seriously limited in her ability to understand, remember and carry out very short and simple instructions and to take appropriate precautions when faced with normal hazards. Pluger further indicated that Trittin has either noticeable difficulty or an extreme limitation on her ability to remember procedure, sustain a work routine without supervision, maintain attention for at least two hours, maintain regular attendance and punctuality, make simple decisions, avoid distraction by others, complete a normal workday or workweek without interruption from symptoms, work at a consistent pace, ask simple questions, accept instruction and appropriate criticism, get along with coworkers, respond appropriately to changes in routine, and deal with normal work stress. For Pluger, Trittin also had marked limitations with understanding, remembering and carrying out detailed instructions, setting realistic goals, dealing with the stress of semiskilled and skilled work, interacting appropriately with the general public, maintaining socially appropriate behavior, adhering to basic standards of neatness and cleanliness, travelling in unfamiliar places and using public transportation.

**B. The state agency medical consultants**

By contrast, Dr. Robert Barthell, a state agency medical consultant, reviewed Trittin's medical history in November 2022 and concluded that she could complete a normal workday and work week "in a job requiring only simple, routine tasks" that was not fast paced or had strict work production quotas and that required at most minimal interaction with the general public. AR 76. Although Trittin had a moderate limitation on interacting with others and concentrating, persisting or maintaining pace, Dr. Barthell indicated no limitation on her ability to understand, remember, or apply information, or to adapt or manage herself.

3

Dr. Barthell noted that "the intensity of the symptoms and their impact on functioning are not consistent with the totality of the evidence," and that there are "inconsistencies between the claimant's reporting to her medical providers and what she has reported on her" function report.  AR 77.  For example, Trittin reported on her function report that she does not want to leave the house, but told her provider that she does better when she leaves the house with her family and is unhappy that she cannot drive because she is unable to afford a car breathalyzer.

Dr. Barthell's opinion as to Trittin's mental limitations was affirmed by Dr. Stephen Drake, also a state agency medical consultant, in August 2023.  AR 86–88.[3]

## C.  The ALJ's opinion

In a May 3, 2024 decision, the ALJ found Trittin not disabled.  AR 25.  The ALJ found that Trittin had the following severe, but not presumptively disabling, impairments:  seizure disorder, migraine headache disorder, asthma, anxiety disorder, depressive disorder, and PTSD. Even so, the ALJ found that Trittin had the residual functional capacity to perform work at the light level of intensity "no greater than what is found in a typical office setting" with several physical and mental limitations.  AR 20.  Specifically as to Trittin's mental limitations, the ALJ limited her to understanding, remembering, and carrying out no more than simple instructions, simple, routine tasks, and only occasional changes in the work setting.  Trittin was also limited to work without a production rate, pace, or hourly production quotas, although variably paced

---

[3] Two other state agency medical consultants, Dr. Mina Khorshidi and Dr. Craig Billinghurst, gave opinions on Trittin's exertional limitations, which are not at issue in this appeal.  AR 77–78, 88–90.

tasks and end-of-day production quotas are permissible, and with minimal to no interaction with the public and only occasional interaction with coworkers and supervisors.

Based on testimony from a vocational expert, the ALJ concluded that Trittin had no past relevant work but could perform other jobs available in significant numbers in the national economy, including a store laborer, a linen room attendant, and a hospital cleaner. AR 24–25. But, during questioning by Trittin's attorney, the vocational expert further testified that a person who needed additional breaks where they would be off task greater than 10 percent of the workday would not be able to perform any of those jobs. AR 68. During questioning by the ALJ, the vocational expert testified that being absent from work one to two days a month on a continual basis and being unable to engage in sustained work activity for a full eight-hour workday on a consistent basis would be work-preclusive limitations. AR 66–67.

The Appeals Counsel denied Trittin's request for review on October 23, 2024, so the ALJ's decision became the final decision of the Commissioner. AR 1. On appeal, Trittin challenges the ALJ's findings as to her mental limitations. The court will discuss additional factual and procedural background as necessary in the analysis below.

## LEGAL STANDARDS

The Social Security Act, 42 U.S.C. §§ 405(g) & 1382(c)(3), authorizes review of the Commissioner's final decision. Upon review, the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quotation and citation omitted); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (same). The court

reviews the ALJ's opinion to determine whether it reflects an adequate logical bridge from the evidence to the conclusions and will "reverse only if the record 'compels' a contrary result." *Borovsky v. Holder*, 612 F.3d 917, 921 (7th Cir. 2010).  The Supreme Court has emphasized that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103.

The court's review is deferential, and the court may not displace the ALJ's judgment by reweighting evidence, resolving evidentiary conflicts, or making its own credibility determinations.  *See Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022); *see also Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

ANALYSIS

Trittin's sole claim on appeal is that the ALJ erred in rejecting Pluger's opinion regarding her marked mental limitations.  Specifically, Trittin argues that reversal is required because the ALJ did not fairly apply the relevant evaluation criteria related to supportability and consistency, failed to adequately explain his conclusions, and ignored evidence favorable to Trittin's claim.

Because Trittin filed her claim after March 27, 2017, the ALJ was required to evaluate Pluger's opinion under the Commissioner's updated regulation for evaluating medical opinions. 20 C.F.R. § 404.1520c (evaluating opinion evidence for claims filed after March 27, 2017). Under this regulation, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."  20 C.F.R. § 404.1520c(a). Instead, the ALJ is to consider the following factors when determining the proper weight to

apply to the opinion or prior administrative finding:  (1) supportability; (2) consistency; (3) the relationship with the claimant, including the length, purpose, and extent of the treatment relationship, the frequency of examinations, and the examining relationship; (4) specialization; and (5) other factors brought to the attention of the commissioner.  20 C.F.R. § 405.1520c(c). While the ALJ must consider all of these factors, he is required to explain only how he considered supportability and consistency.  20 C.F.R. § 404.1520c(b).  But an ALJ need only "minimally articulate[ ]" his reasoning for the persuasiveness of the medical opinion.  *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (quotation omitted).

Here, the ALJ explained that Pluger's opinions were unpersuasive because:  (1) "there is not much by way of supporting explanation" and the report "is based on self-reported symptoms, some of which are denoted as 'in the past' and heightened under stress;" (2) Pluger's observation that Trittin had attempted numerous jobs since 2020 is not reflected in Trittin's earnings records; and (3) the severe limitations indicated by Pluger "are inconsistent with longitudinal mental status exams which consistently noted cooperative attitude, linear, organized and goal directed thought processes, normal thought content, full orientation, and normal perception, cognition, memory, insight, and judgment." AR 22.  Instead, the ALJ found more persuasive the opinions of the reviewing state agency psychologists, Drs. Barthell and Drake, which were "generally consistent with the treatment records which noted depressed mood and affect, but otherwise normal findings on mental status exams." *Id.*

For Trittin, the ALJ's reasoning for rejecting Pluger's opinion is deficient, not reflective of the record, and thus requires remand.  Trittin argues that the ALJ's assessment is deficient because Pluger is an in-person treatment provider whose findings are supported in the statement itself and by her treatment records.  Pluger, notes Trittin, has examined her in person

over 30 times beginning in 2019.  Specifically, Trittin argues that Pluger "gave multiple detailed explanations [in her statement] for her findings," including Trittin's "past trauma" at work and in her personal life, and her "paranoid thoughts about male coworkers."  Dkt. 10 at 24.  Trittin also notes that Pluger explained why Trittin would have and has had difficulty working and listed the specific symptoms she struggles with when under stress.

Trittin points to the following treatment notes from Pluger as additional support for Pluger's conclusions:

- Pluger's initial psychiatric evaluation included a review of Trittin's history and symptoms, and notes her anxiety and panic attacks, and her trauma history, and recommended time off work.  AR 409–417

- Pluger's subsequent treatment notes in December 2019 and February and November 2020 record that Trittin displayed poor eye contact, and reported worsening nightmares and anxiety, and a depressed mood and affect.  AR 712–713, 379–80, 362, 365.

- Trittin was employed at the time of Pluger's initial psychiatric evaluation in October 2019 and had recently completed inpatient treatment.  AR 409, 413.

- Trittin reported being harassed at two different jobs by male coworkers, creating "a significant and dire impact on [her] mental health stability."  AR 415.

- Trittin returned to work with a four-hour restriction but only worked for three hours before leaving due to anxiety.  AR 380.

- Trittin requested to return to work by February 2020 but struggled with attendance due to anxiety, was reprimanded for no-shows/no-calls, and lost her job by May 2020.  AR 729, 738, 753, and 760.

- In March 2021, Trittin reported decreased anxiety because she was not working, and in June 2023, Trittin reported that even thinking about going back to work caused anxiety and that going to work would make her physically ill.  AR 694 and 804.

Above all, the ALJ must evaluate the persuasiveness of an opinion for its supportability and consistency, 20 C.F.R. § 404.1520c(a), and the record shows the ALJ had sufficient

evidentiary support for his conclusions on these points.  To begin, the ALJ did not disregard this treatment history with Pluger.  The ALJ acknowledged Trittin's assertions of daily panic attacks and PTSD symptoms and that mental status exams indicated ongoing "depressed mood and affect."  AR  21.  But the ALJ also cited to various portions of Pluger's treatment notes, in particular to her notes on Trittin's mental status exams, indicating prosocial and consistently "normal behavior" from Trittin.  *Id.*; *see also Moyer v. O'Malley,* No. 23-2599, 2024 WL 1411565, at *4 (7th Cir. Apr. 2, 2024) ("the regulations specifically permit an ALJ to rely on [mental status] examinations as evidence of disability") (citing 20 C.F.R. Part 404, Subpart P, App'x 1 §  12.00(C)(2)(c)).  For example, the ALJ noted that in February 2020, Trittin reported "doing ok" after returning to part-time work and enjoyed spending time with her grandchildren.  AR 21 (citing AR 330–331).  The ALJ further observed that Trittin displayed "logical thought process, full affect, normal thought content, and intact insight, judgment, and short-term and long-term memory" as Pluger noted in her mental status exams.  AR 21 (citing AR 332–33).

Similarly, although Trittin's treatment records continued to indicate fluctuating moods and chronic anxiety, the ALJ observed that Trittin continued to enjoy spending time with her grandchildren and camping in the summer.  AR 21; (citing AR 643, 663, 669).  And that Pluger's mental status exams through August 2022 indicated that "she consistently presented with [a] cooperative attitude, linear, organized, and goal directed thought processes, normal thought content, full orientation, and normal perception, cognition, memory, insight, and judgment."  AR 21 (citing AR 645, 650, 655, 660, 665, 670, 675, 680, 684, 695, 701, 708, and 715).  The ALJ made the same observation about Trittin's mental status exams in January and July 2023 despite financial stress affecting Trittin's mood.  AR 21 (citing AR 804–806 and 812–814).

Given this record, the ALJ was not required to give Pluger's opinion more deference even as Trittin's primary mental health care provider. *See* 20 C.F.R. § 404.1520c(a) (for claims filed after March 27, 2017, medical sources' opinions are not entitled to any specific evidentiary weight). Contrary to Trittin's contentions, the ALJ did not ignore her relevant treatment history and accurately (albeit briefly) explained why Pluger's opinion of Trittin's mental limitations was not consistent with her own treatment notes. *See Prill v. Kijakazi*, 23 F.4th 738, 751 (7th Cir. 2022) (it is within the ALJ's discretion to assign weight to different opinions based on their consistency with the overall record).

Trittin also challenges the ALJ's statement questioning the accuracy of Pluger's remark that Trittin had tried various times to work since 2020 but was unsuccessful, asserting that she had tried to work. The ALJ reviewed Trittin's employment history with her at the hearing. AR 38–41. Trittin's earnings records show her having only one job in 2019 and 2020. AR 198 (indicating Trittin worked for "Doris L. Clark"). And Trittin testified that she had not worked since April 2020. AR 39. Trittin points out that her treatment notes reflect she worked three hours of a four-hour shift in late 2020. But in light of the earnings record and Trittin's testimony, it is not unreasonable for the ALJ to question Pluger's statement that Trittin "attempted to work @ several jobs since being under [Pluger's] care" beginning in late 2019. AR 1045. And as explained above, the ALJ did not overlook Pluger's treatment records in crafting the RFC.

In reply, Trittin contends that the ALJ "did not claim that the RFC was based on the state-agency opinions and did not cite the opinions when adopting the RFC," so these opinions cannot support the ALJ's RFC assessment. Dkt. 19 at 7. Not so. The ALJ noted that he made his finding after considering "the medical opinion(s)," and then went on to discuss the medical

10

record, including the state agency opinions, before stating that the RFC was based in part on the medical record. AR 20, 23. Trittin also argues in reply that the RFC did not account for the state agency opinion finding that she would experience "interruptions from psychologically based symptoms," AR 79, 91, or the vocational expert's testimony that the inability to engage in sustained work for a full workday and being absent or arriving late or leaving early more than once a month could be work-preclusive. But the state agency opinions went on to state that despite any interruptions from symptoms, Trittin could "complete a normal workday and work week in a job requiring only simple, routine tasks" and that did not require production quotas or a fast pace. AR 79, 91. The ALJ thus incorporated and accounted for these opinions by limiting Trittin to work requiring "simple, routine tasks" and without production rate or pace work and no specific hourly production quotas. AR 20.

In sum, the ALJ's discounting of Pluger's opinion is reasonably supported by the evidence and this court will not reweigh it. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (the court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner). Accordingly, this court must uphold the ALJ's decision.

ORDER

IT IS ORDERED that plaintiff Michelle A. Trittin's motion for summary judgment, Dkt. 9, is DENIED.   The clerk of court is directed to enter judgment in favor of the Commissioner and to close this case.

Entered March 30, 2026.

BY THE COURT:

/s/

_____
ANITA MARIE BOOR
Magistrate Judge